** E-filed on 8/8/05 **

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CITY OF CAMPBELL, et al., | Case Number C 03-05591 JF |
| Plaintiffs, | ORDER[1] GRANTING DEFENDANTS' MOTION FOR SUMMARY |
| v. | JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY |
| COUNTY OF SANTA CLARA, et al., | ADJUDICATION |
| Defendants. | [Docket No. 33] |

Defendants move for summary judgment or, in the alternative, summary adjudication. Plaintiffs oppose the motion.[2] The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on August 5, 2005. For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

On December 12, 2003, Plaintiffs City of Campbell ("City"), Robert G. Slade ("Slade"), and Russell and Kathleen Berg ("the Bergs") (collectively "Plaintiffs") filed the instant action

---

[1] This disposition is not designated for publication and may not be cited.

[2] Plaintiffs have assigned their claims to the Wayne Seminoff Company to prosecute on their behalf.

1    against Defendants County of Santa Clara ("County"), David Elledge ("Elledge"), and Scott

2    Johnson ("Johnson") (collectively "Defendants"), alleging that Defendants failed to pay them

3    interest owed on money deposited with the Santa Clara Superior Court ("Superior Court") in

4    connection with litigation before that court between 1973 and 1985, inclusive. Elledge and

5    Johnson were the County controllers/treasurers at the time of the events alleged in the

6    complaint.[3]

7         The City's claims arise out of its deposit of $194,142 with the Superior Court in seven

8    eminent domain lawsuits it filed in 1973: (1) *City of Campbell v. Jacobson* (No. 285817), (2)

9    *City of Campbell v. Rose* (No. 285816), (3) *City of Campbell v. Pereira* (No. 285811), (4) *City of*

10   *Campbell v. Colombini* (No. 285809), (5) *City of Campbell v. Jakob* (No. 285810), (6) *City of*

11   *Campbell v. Fellman* (No. 285815), and (7) *City of Campbell v. DiLonardo* (No. 285807). *See*

12   Rossi Aff., Exs. A-H. The cases were resolved the same year they were filed, at which time the

13   Superior Court ordered the County controller to draw a warrant for and the County treasurer to

14   pay, in *Jacobson*, the entire deposited amount to the City following dismissal of the action by the

15   City and, in the other six cases, the entire deposited amount to the defendant(s).[4] *See id.* In

16   responding to the County's special interrogatories in the instant action, the City has stated that it

17   does not have "personal knowledge" of (1) the exact amount of money, if any, that the Superior

18   Court ordered returned to the City or that the City received from the County or (2) the date, if

19   any, that the City received such money from the County in *Jacobson*, *Rose*, *Pereira*, *Colombini*,

20   *Jakob*, or *DiLonardo*, and it has suggested that the County may have such information. *See* Rossi

21   Aff., Ex. P. However, Defendants' counsel has declared that, after a diligent search of County

22   records, Defendants themselves have been unable to locate documents regarding the original

23   deposits, copies of judgments or warrants, or documents regarding any settlements in the

24   _____

25        [3] Richard Atkinson, who also was the County controller/treasurer at the time of the events
     alleged in the complaint, is named as a fourth defendant in the complaint but does not appear to
26   have been served with the summons and has not made an appearance in this case.

27        [4] The orders in five of the latter six cases—*Rose*, *Pereira*, *Jakob*, *Fellman*, and
     *DiLonardo*—specified that those actions had been settled.
28

                                                  2

1  underlying cases other than the Superior Court's orders described above.[5] *See* Rossi Aff. ¶¶ 28-
2  29.

3          Slade's claims arise out of the deposit of $38,855 with the Superior Court in *New York*
4  *Life Insurance Company v. Slade* (No. 435097), an interpleader action in which he was the
5  assignee of one of the defendants. *See* Rossi Aff., Exs. I-K. The plaintiff in *New York Life*
6  *Insurance Company* made the deposit in 1979, and the terms under which the case was settled
7  required payment of $15,542 to Slade. *Id*. In 1984, the Superior Court ordered the County
8  controller to draw a warrant for and the County treasurer to pay such amount to Slade from the
9  deposit. *See id.* In responding to the County's special interrogatories in the instant action, Slade
10 has stated that he does not have "personal knowledge" of (1) the exact amount of money that the
11 Superior Court ordered paid to him or that he received from the County or (2) the date that he
12 received such money from the County, and he has suggested three other people who may have
13 such information. *See* Rossi Aff., Ex. R.

14         The Bergs' claims arise out of the deposit of $49,033.98 with the Superior Court in
15 *Wilson v. Rathjen* (No. 534641), an action in which they were defendants and cross-defendants.
16 *See* Rossi Aff., Exs. L-M. The plaintiff in *Wilson* made the deposit at the commencement of the
17 action, and, in 1985, the Superior Court found that the Bergs were entitled to $46,089.91 from
18 the deposit. *See id.* The clerk of the court was ordered to "pay the entire balance of the sum
19 deposited by Plaintiff together with accrued interest, if any, to Plaintiff," and then the plaintiff
20 was ordered to pay to the Bergs, in addition to the aforementioned sum, 94.1 percent of any
21 interest that had accrued on the deposit. Rossi Aff., Ex. L. In responding to the County's special
22 interrogatories in the instant action, Russell Berg has stated that he does not have "personal
23 knowledge" of (1) the exact amount of money that he received from the County or (2) the date
24 that he received such money from the County, and he has suggested that the County or the

25

26 _____
27         [5] This statement also applies to Defendants' inability to locate documentary evidence,
   other than the Superior Court's orders described in this Order, with respect to Slade's and the
28 Bergs' underlying cases. *See infra.*

Case No. C 03-05591 JF
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION
(JFLC1)

1   plaintiff in *Wilson* may have such information. *See* Rossi Aff., Ex. N.

2       Plaintiffs variously bring claims for violations of their civil rights pursuant to 42 U.S.C.

3   § 1983, breach of trust, open book account, and violations of section 573 of the California Code

4   of Civil Procedure. They also seek, in addition to money damages and attorney's fees, a

5   declaration that Defendants' alleged custom, policy, and practice of withholding interest on

6   money deposited with the Superior Court violates the Takings Clause of the Fifth Amendment

7   and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

8                                  **II. LEGAL STANDARD**

9       A motion for summary judgment should be granted if there is no genuine issue of

10  material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

11  56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that

12  might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. There

13  is a genuine dispute about a material fact if there is sufficient evidence for a reasonable jury to

14  return a verdict for the nonmoving party. *Id*. The moving party bears the initial burden of

15  informing the Court of the basis for the motion and identifying portions of the pleadings,

16  depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of

17  a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the

18  party moving for summary judgment would not bear the ultimate burden of persuasion at trial, it

19  must either produce evidence negating an essential element of the nonmoving party's claim or

20  defense or show that the nonmoving party does not have enough evidence of an essential element

21  to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

22  210 F.3d 1099, 1102 (9th Cir. 2000).

23      If the moving party meets its initial burden, the burden shifts to the nonmoving party to

24  present specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ.

25  P. 56(e); *Celotex Corp.*, 477 U.S. at 324. The nonmoving party may not rely on the mere

26  allegations or denials in its pleading in order to preclude summary judgment. Fed. R. Civ. P.

27  56(e); *Anderson*, 477 U.S. at 248. The evidence and all reasonable inferences therefrom must be

28

                                        4

1    viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

2    *Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Summary judgment thus is not

3    appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve

4    the material issue in its favor. *Anderson*, 477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132,

5    1134-36 (9th Cir. 1991).

6                                  **III. DISCUSSION**

7         Defendants advance numerous independent grounds for granting summary judgment in

8    their favor. The Court will address two of those grounds, which provide alternative bases for

9    granting Defendants' motion.[6] First, Defendants argue that neither the County nor the County

10   treasurer can be held liable for the alleged failure of the County treasurer to pay interest on funds

11   deposited with the Superior Court, because at all relevant times the County treasurer was acting

12   as an officer not of the County but of the Superior Court. They contend that the instant case is

13   controlled by the California Court of Appeal's decision in *City of Santa Clara v. County of Santa*

14   *Clara*. In that case, the City of Santa Clara alleged that it suffered a loss of nearly $8,000 in

15   interest as a result of the county's failure to place the city's deposits from certain condemnation

16   proceedings into the state treasury, where they would have earned interest, rather than into the

17   county treasury, where they did not earn interest. *City of Santa Clara v. County of Santa Clara*,

18   81 Cal. Rptr. 643, 644 (Ct. App. 1969). In the underlying condemnation proceedings, the

19   superior court had ordered the city to deposit a total of $54,500 with the clerk of the court, but it

20   had not specified in its orders which depository should be used. *Id*. The city's theory of recovery

21   against the county was that the county, acting through its employees, the county clerk and the

22   county treasurer, was responsible for the loss. *Id*. However, the Court of Appeal rejected the

23   argument that the county could be liable for the actions of the county treasurer in either accepting

24   the deposit into the county treasury or not himself depositing the funds into the state treasury,

25

26   _____

27          [6] Having found that either of those two grounds are sufficient to warrant summary
     judgment in Defendants' favor, the Court need not address the parties' arguments regarding the
28   other grounds advanced by Defendants.

                                         5

because those actions occurred in the course of the treasurer's duties as treasurer of the superior court. *See id.* at 646. Accordingly, the Court of Appeal held that neither the county treasurer nor the county itself—the latter under the theory of respondeat superior—could be liable for the alleged loss of interest. *See id.* at 645.

In reaching its decision, the Court of Appeal relied heavily upon the California Supreme Court's analysis in *Metropolitan Water District v. Adams*, a case in which the plaintiff sought to collect interest on funds deposited with the court at the commencement of the underlying eminent domain proceedings. *See Metro. Water Dist. v. Adams*, 197 P.2d 543, 544 (Cal. 1948). There, the deposits had been turned over to the county treasurer, who in turn had deposited the money into various bank accounts. *Id.* The Supreme Court concluded that

> *moneys deposited with the court* as in the nature of security or a cash bond in order to gain possession of the subject property in eminent domain proceedings are *legally in the custody and within the control of such court* and that any *interest* paid on such moneys by a bank in which they are deposited attaches in ownership to the owner of the moneys and, being in the *custody of the court*, is, like the principal sum, *subject to the court's control.*[7]

*Id.* at 544-45 (emphasis added). It further concluded that "[i]t is clear that the funds were *not in the custody of the county* as such, for the sums remain subject to the order of the court, and the county treasurer in handling the funds must look to the court for direction." *Id.* at 548 (emphasis added); *see also* Cal. Civ. Proc. Code § 573 (requiring money deposited with the court to be deposited with the county treasurer and "to be held by him subject to the order of the court").[8] Accordingly, the county treasurer was found to be "in effect the treasurer of the court, an ex-officio officer," and to "hold[] the money for the court, not for the county." *Metro. Water*

---

[7] This reasoning also has been applied to deposits with the court in interpleader actions. *See Ostly v. Saper*, 305 P.2d 946 (Cal. Ct. App. 1957).

[8] Section 573 of the California Code of Civil Procedure was repealed recently and replaced with text requiring that deposits with the court be deposited with the court's treasury as provided in section 68084 of the California Government Code. However, this recent statutory change does not affect the county treasurer's obligations or status in relation to the Superior Court at the time of the events giving rise to the instant lawsuit.

Case No. C 03-05591 JF
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION
(JFLC1)

1 | *Dist. v. Adams*, 197 P.2d at 548.

2 |      Plaintiffs assert that Defendants have misapplied *City of Santa Clara* to the instant case.

3 | However, their argument that the County is a proper defendant because it is the custodian of the

4 | funds Plaintiffs seek to recover is contradicted by the very cases they discuss in their opposition

5 | brief. For example, in *Metropolitan Water District*, the Supreme Court explicitly concluded that

6 | deposits and any interest earned thereon were in the custody and under the control of the *court*,

7 | not the county. Plaintiffs cite no case that establishes the opposite proposition. Moreover,

8 | Plaintiffs attempt, in a mere three sentences, to distinguish the instant case from *City of Santa*

9 | *Clara* on their respective facts, asserting that Plaintiffs "do not seek damages on a negligence

10 | theory a [sic] based on a mishandling the [sic] deposited funds, thereby causing a loss of

11 | interest," but instead have filed the instant lawsuit to compel the County "to disgorge monies it

12 | holds as a custodian." Opp'n at 8. However, while the two cases involve different claims and

13 | obviously are not factually identical, Plaintiffs' argument once again is based on the erroneous

14 | assumption that the County—and not the Superior Court—was the custodian of the funds.

15 |      *City of Santa Clara* and *Metropolitan Water District* clearly establish the legal

16 | relationships among the relevant entities—Plaintiffs, the Superior Court, and the County and its

17 | officers—that govern the instant dispute. Plaintiffs seek to recover funds that were—and, if they

18 | were not paid out, still are—in the custody and under the control of the Superior Court. In legal

19 | terms, the County itself had no control over those funds, and the County treasurer, when acting

20 | with respect to such funds, was acting as an officer of the Superior Court and had no authority to

21 | do anything with the funds except as directed by the Superior Court. As such, neither the County

22 | nor the County treasurer can be liable to Plaintiffs for the alleged failure to pay them interest on

23 | the deposits in the underlying cases. Accordingly, Defendants' motion for summary judgment

24 | may be granted on this ground.

25 |      Defendants also argue, as a second ground for summary judgment in their favor, that

26 | Plaintiffs lack sufficient evidence of an essential element of their claims to carry their burden of

27 | persuasion at trial, *see Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102, because (1) Plaintiffs

28 |

7

1   have declared that they lack personal knowledge of the amount of money they received from the

2   County, as well as the date of receipt, following resolution of the underlying lawsuits and (2)

3   they have not produced any documents demonstrating that they were *not* paid the interest they

4   now seek.[9] In response, Plaintiffs argue that they can prove that Defendants failed to pay interest

5   on the deposits; however, the only evidence that they have submitted in support of this argument

6   is the affidavit of Wayne Seminoff ("Seminoff") of the Wayne Seminoff Company.[10]

7   Seminoff is in the business of "locating and recovering abandoned or dormant assets for

8   lawful owners of the assets." Seminoff Opp'n Aff. ¶ 2. As part of his business, he has "personally

9   examined at least 10,000 court files in all of the most populous states in the United States and

10  many files in foreign countries," as well as "thousands of pages of financial records made

11  available to [him] by courts and other public entities." *Id*. Based on this experience, he has

12  observed that the state court cases that are the subject of this lawsuit have the "same indicators of

13  unpaid interest" as the "over 5,000 cases" he has researched "where interest was not paid," and

14  he has concluded that no interest was paid in the underlying cases. *Id*. ¶ 3. Specifically, he has

15  declared that he has found no orders for payment of interest in the court files and that he has not

16  been able to locate any other records showing that interest was paid to Plaintiffs.[11] *See id*. ¶¶ 3, 5.

17

18      [9] Although Defendants have not submitted the same interrogatory responses from
19  Plaintiffs with respect to *Fellman* as they have with respect to the City's other six underlying
    cases, *see supra* p. 2, that does not alter the fact that Plaintiffs have failed to produce
20  documentary evidence of the alleged nonpayment of interest.

21      [10] At the hearing on the instant motion, Plaintiffs also suggested that the orders from the
22  underlying cases, which were submitted into evidence by Defendants, prove that Plaintiffs were
    not paid interest. However, with one exception, *see supra* pp. 3-4, those orders show only the
23  amount of the deposits made and how the deposits themselves were to be disbursed; they do not
    even mention the interest that may have accrued on the deposits, much less state what was to be
24  done with it, and thus cannot carry Plaintiffs' burden to prove the nonpayment of interest,
    especially in light of Plaintiffs' inability to produce any other documents or testimony proving
25  that they did not actually receive interest.

26
        [11] Seminoff's general observations and conclusions regarding practices in other California
27  counties (e.g., that interest sometimes was not paid even when it was ordered paid, that interest
    has been underpaid) are irrelevant to the actions allegedly taken by the County of Santa Clara, a
28

8

1    In the absence of such records, he has concluded that interest in fact was not paid. *See id.* ¶¶ 3, 5,

2    6. In addition, with respect to the City's seven cases, Seminoff has submitted a copy of a letter he

3    received from the County in April 2003 in which the County stated that it could not locate the

4    "court deposit records" but that the records that were located "show[] that on October 8, 1987,

5    the County paid all accrued interest on each of those cases."[12] Seminoff Opp'n Aff., Ex. B. No

6    party has submitted copies of these records.[13]

7        The Court concludes that the evidence submitted and cited by Plaintiffs is inadequate to

8    preclude summary judgment, because Plaintiffs have not shown that they have sufficient

9    evidence of an essential element of each of their claims—the nonpayment of interest—to carry

10   their burden of persuasion at trial. Seminoff's affidavit, while not irrelevant, by itself is too

11   speculative and conclusory to carry Plaintiffs' burden. The most Plaintiffs have shown is that

12   they cannot find a record demonstrating payment of interest either in admittedly incomplete files

13   from state court cases that were resolved twenty or more years ago or, as would be suggested by

14   their interrogatory responses and their failure to submit additional documentary evidence, in any

15   of their own files. However, contrary to the suggestion in their opposition brief that they are not

16   required to "prove a negative, i.e., that they were not paid," Opp'n at 20, it *is* Plaintiffs' burden to

17   prove that they were not paid the money they now seek through the instant lawsuit. Having failed

18   to present sufficient evidence that they would be able to carry their burden of persuasion at trial,

19   Plaintiffs cannot preclude summary judgment in favor of Defendants. Accordingly, Defendants'

20   motion for summary judgment may be granted on this ground as well.

21   //

22

23   separate governmental entity. The Court has considered only the portions of Seminoff's affidavit

24   that clearly relate to the cases that are the subject of the instant lawsuit.

25       [12] Inexplicably, the County subsequently refers to the located records as "court deposit
     records." Seminoff Aff., Ex. B. Whatever the label used, it is clear that the County was trying to

26   communicate that whatever records it located indicated that interest had been paid.

27       [13] Seminoff states that Defendants have not produced the records, but there is no evidence
     that Plaintiffs ever moved to compel production of these documents.

28

9

Case No. C 03-05591 JF
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION
(JFLC1)

1

**IV. ORDER**

2      Good cause therefore appearing, IT IS HEREBY ORDERED that Defendants' motion for

3  summary judgment or, in the alternative, summary adjudication is GRANTED. The pretrial

4  conference currently set for August 19, 2005, and the trial date currently set for September 2,

5  2005, are VACATED.

6

7

8

9  DATED: August 8, 2005

10

11                                          /s/ (electronic signature authorized)
                                            JEREMY FOGEL
12                                          United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 03-05591 JF
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION
(JFLC1)

1   This Order has been served upon the following persons:

2

3   Nicholas Damer        nicliberty@aol.com, kldamer@aol.com

4   Michael L. Rossi      michael.rossi@cco.co.scl.ca.us

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 03-05591 JF
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION
(JFLC1)